**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
GREGG M. BECKER,

                      *Plaintiff*,

                 -*against*-

STATE FARM FIRE AND CASUALTY
COMPANY,

                   *Defendant*.
------------------------------------------------------------X

|  |
|---|
| **REPORT AND RECOMMENDATION** |
| 20-CV-06023 (JMA)(JMW) |

**A P P E A R A N C E S:**

**Gregg M. Becker**
*Proceeding Pro Se*

Joseph DeDonato, Esq.
Mark Thomas Hall, Esq.
**Bennett, Bricklin & Saltzburg LLC**
40 Wall Street, Suite 1002
New York, NY 10005
*Attorneys for Defendant*

**WICKS,** Magistrate Judge:

      Plaintiff, Gregg M. Becker ("Plaintiff" or "Mr. Becker"), commenced this action against

State Farm Fire and Casualty Company ("Defendant" or "State Farm"), alleging State Farm

failed to fulfill its coverage obligations under the Homeowners Insurance Policy issued to him in

connection with a fire that occurred at the Plaintiff's home. (ECF No. 1-1.) Before the Court, on

referral from the Hon. Joan M. Azrack (*see* Electronic Order dated October 18, 2023), is

Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (*see*

ECF No. 81), which is opposed by Plaintiff (ECF No. 81-78), and Plaintiff's Cross-Motion to

Strike certain portions of Defendant's Rule 56.1 Statement (ECF Nos. 81-76, 81-78), which is

opposed by Defendant (ECF No. 81-157.)  For the reasons stated herein, the undersigned

respectfully recommends that Defendant's motion for summary judgment (ECF No. 81) be

**GRANTED** in its entirety, and Plaintiff's Cross-Motion to Strike portions of the Rule 56.1

statement (ECF Nos. 81-76, 81-78) be **GRANTED** *in part* and **DENIED** *in part*.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are

uncontested unless otherwise noted.[1] In November 2018, Plaintiff owned a single-family home

located at 105 Friends Lane, Westbury, NY (the "Premises"). (ECF No. 81-77 at ¶ 1.) On

November 12, 2018, a fire occurred at the Premises, resulting in physical damage to the

Premises. (*Id*. at ¶ 2.) State Farm's investigation of the fire determined that its cause and origin

was the overheating of "daisy chained" extension cords, which electrified a space heater the

living area of the Premises. (*Id*. at ¶ 3.)

---

[1] A standalone citation to a party's Rule 56.1 statement throughout this Report and Recommendation means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents that support that particular statement. Where relevant, however, the Court may cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-cv-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03 Civ. 2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.").  Further, to the extent a party improperly interjects legal arguments or immaterial facts in response to facts asserted by the opposing party, and does not specifically controvert such facts, the Court disregards those statements.  *See McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).

### A.  The Homeowners Insurance Policy

Defendant insured the Premises under a Homeowners Insurance Policy, Number

56CEX810 (hereafter, the "Policy"). (*Id*. at ¶ 8.) The Policy includes "Coverage A –Dwelling,"

"Coverage B –Personal Property," and "Coverage C –Loss of Use." (*Id*. at ¶ 9.) **Coverage A –**

**Dwelling** provides:

> [State Farm] cover[s] the dwelling used principally as a private residence on the residence premises. Dwelling includes: a. structures attached to the dwelling; b. materials and supplies located on or adjacent to the residence premises for use in the construction, alteration or repair of the dwelling or other structures on the residence premises; c. foundation, floor slab and footings supporting the dwelling; and d. wall-to-wall carpeting attached to the dwelling.

(*Id*.) Coverage B –Personal Property provides coverage for "personal property owned or used by

an insured while it is anywhere in the world[,]" including  "structures not permanently attached

to or otherwise forming a part of the realty." (*Id*.; ECF No. 81-10 at 8.) Coverage C – Loss of

Use provides coverage for "Additional Living Expense" ("ALE") – that is, when a "Loss Insured

causes the residence premises to become uninhabitable, [State Farm] will cover the necessary

increase in cost [the Insured] incurs to maintain [his/her] standard of living for up to 24

months[,]" with payment "limited to incurred costs for the shortest of: (a) the time required to

repair or replace the premises; (b) the time required for [the Insured's] household to settle

elsewhere; or (c) 24 months." *Id*. at 9.

Coverage under the Policy is subject to the following "Conditions" specified in "Section I

– CONDITIONS":

> 2. **[Insured's] Duties After Loss**. After a loss to which this insurance may apply, [the Insured] shall: a. give immediate notice to [State Farm] or [its] agent; b. protect the property from further damage or loss, ***make reasonable and necessary temporary repairs required to protect the property***, [and] keep an accurate record of repair expenditures; c. ***prepare an inventory of damaged or stolen personal property***[,] show[ing] in detail the quantity, description, age, replacement cost and amount of loss[,] and [a]ttach[ing] to the inventory all bills, receipts and related documents that substantiate the figures in the

inventory; d. as often as [State Farm] reasonably require[s]: (1) exhibit the damaged property; (2) provide [State Farm] with records and documents [it] request[s] and permit [State Farm] to make copies; (3) submit to and subscribe, while not in the presence of any other insured: (a) statements; and (b) *examinations under oath*; and (4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and e. submit to [State Farm], within 60 days after the loss, [the Insured's] *signed, sworn proof of loss* which sets forth, to the best of your knowledge and belief: (1) the time and cause of loss; (2) interest of the insured and all others in the property involved and all encumbrances on the property; (3) other insurance which may cover the loss; (4) changes in title or occupancy of the property during the term of this policy; (5) specifications of any damaged building and detailed estimates for repair of the damage; (6) an inventory of damaged or stolen personal property described in 2.c.; (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

(ECF No. 81-77 at ¶ 11) (emphasis added).

### B. <u>State Farm's Claims Handling</u>

On November 12, 2018, Plaintiff served initial notice of the fire at the Premises to State Farm. (*Id*. at ¶ 12.) State Farm's claim representative, Dean Condoleo, was assigned to adjust the fire loss. (*Id*. at ¶ 13.) Mr. Condoleo made initial contact with the Plaintiff on November 13, 2018, and arranged to inspect the Premises on November 15, 2018. (*Id*. at ¶ 14.) On November 14, 2018, Glen Rosenbloom of the public adjusting firm, Champion Adjustments ("Champion"), called Mr. Condoleo and advised him that Champion had signed Plaintiff as a client, and was representing him in the fire loss claim. (*Id*. at ¶ 15.) Shortly thereafter, Mr. Rosenbloom presented State Farm with a Retainer Agreement signed by Plaintiff. (*Id*.)

On November 15, 2018, Mr. Condoleo met with Plaintiff and his public adjuster, Mr. Rosenbloom, along with fire investigator, Bill Hayden, to inspect the Premises. (*Id*. at ¶ 16.) At that inspection, Mr. Condoleo estimated it would take approximately six to eight months to repair the fire damage. (*Id*. at ¶ 17.) On November 20, 2018, Mr. Condoleo met with Mr. Rosenbloom and James Seviour of Minogue & Associates, a building damage estimator retained

by State Farm, to evaluate the damage to the building under Coverage A. (*Id*. at ¶ 18.) State Farm made $15,000 in advance payments directly to Plaintiff – $5,000 on November 15, 2018, and $10,000 on November 20, 2018 – under Coverage B of the Policy for contents lost in the fire. (*Id*. at ¶ 35.) On December 4, 2018, State Farm received the building repair estimate from Mr. Seviour, who estimated the total damage at $185,827.06, less recoverable deprecation of $26,702.45, less the deductible of $1,000.00, leaving an actual cash value of $158,124.61. (*Id*. at ¶ 19.)

Following the fire loss, Plaintiff took up occupancy in hotels and declined to look for temporary rental housing. (*Id*. at ¶ 59.) State Farm reached an agreement with Plaintiff through Mr. Rosenbloom, whereby State Farm would pay the monthly equivalent of fair market rent offset by the estimated monthly costs of utilities, which Plaintiff would not be paying while staying in hotels. (*Id*. at ¶ 60.) The fair market rental value was established at $4,355 per month (offset by $250 per month for utilities abatement resulting in a monthly benefit of $4,105.00) and the agreement was memorialized in correspondence from Mr. Condoleo to Plaintiff dated December 6, 2018. (*Id*. at ¶ 60.) State Farm confirmed that it would take six to eight months to repair the Premises. (*Id*. at ¶ 61.)

On December 12, 2018, State Farm issued its "Coverage A, Building Damage" loss offer to Plaintiff and Champion in accordance with the estimates provided by Mr. Seviour ("State Farm's December 12, 2018 Offer") (*Id*. at ¶ 20.) That same day, State Farm issued the following payments to Plaintiff and his mitigation contractor, CPR Restoration, Inc. ("CPR Restoration"), under Coverage A of the Policy: (i) $17,480.35 for "Building Demolition/Mitigation[,]" and (ii) $842.93 for "Asbestos Testing." (*Id*. at ¶ 21.) State Farm issued an additional payment of $9,515.75 to Plaintiff and CPR Restoration for "Contents/Pack Out/Clean/Store/Pack In[,]"

5

under Coverage B of the Policy. (*Id*. at ¶ 36.) On December 13, 2018, State Farm provided

Plaintiff the full advance payment of his ALE benefit under Coverage C of the Policy through

June 30, 2019, based on the agreed upon monthly fair market rental payment. (*Id*. at ¶ 62.) In the

correspondence enclosing the ALE payment, State Farm specifically advised Plaintiff and

Champion:

> The Contractor who will be performing the restoration work should begin applying for Building Permits immediately. Please be advised we have calculated the time required to repair to August 31, 2019. State Farm Insurance will not be responsible for Additional Living Expenses beyond the stated Time Required to Repair. Any delays in the rebuilding process related to the Building Contractors actions, or lack thereof, will not be deemed valid reasoning to extend the Additional Living Expense coverage. It is incumbent upon your client to make sure the Building Contractor completes the restoration of the home on or before August 31, 2019.

(*Id*. at ¶ 63.)

Plaintiff formally retained East End Construction ("East End") to repair the fire-damaged

Premises on January 19, 2019. (*Id*. at ¶ 66.) Despite State Farm's multiple notifications that

permit applications should be made immediately, neither Plaintiff nor East End ever sought to

obtain a building permit until June 6, 2019, a five-month long delay in the repair of the fire

damaged home (the "June 6, 2019 Building Permit Application"). (*Id*. at ¶ 67.) On January 21,

2019, Mr. Becker accepted State Farm's December 12, 2018 Offer, and State Farm made

payment as follows:

> Building Replacement Cost: $185,827.06
> Less Deductible: -$1,000.00
> Less Recoverable Depreciation: -$26,702.45
> Building Actual Cash Value: $158,124.61
> Less 6% Public Adjuster Fee: -$9,487.47
>
> ***Amount Paid Directly to Mr. Becker***: $148,637.14

(*Id*. at ¶ 22.) Plaintiff provided a Sworn Proof of Loss in connection with the Coverage A

amount. (*Id*. at ¶ 23.) Plaintiff received a total of $207,354.32 in payments under Coverage A for

6

Building Actual Cash Value damages exclusive of the costs of demolition, temporary electrical supply, boarding and stabilization. (*Id*. at ¶ 33.) Mr. Rosenbloom confirmed that Plaintiff signed the Sworn Proofs of Loss in connection with Coverage A, fully settling any claim under that Coverage with State Farm. (*Id*. at ¶ 34.)

That same day, State Farm notified Plaintiff that the "Contractor who [would] be performing the restoration work [on the Premises] should have begun applying for Building Permits immediately[,]" and that State Farm had calculated the Time Required to Repair to be until July 31, 2019. (*Id*. at ¶ 64.) State Farm further advised Plaintiff that it would "not be responsible for Additional Living Expenses beyond the stated Time Required to Repair." (*Id*.) Plaintiff specifically testified that he was aware that delays in construction caused by himself, or his contractor, would not be a basis to extend ALE benefits under the policy. (*Id*. at ¶ 65.) State Farm paid $9,001.09 for the applicable hotel lodgings occupied by Plaintiff from November 16, 2018 through January 2, 2019. (*Id*. at ¶ 76.) State Farm provided ALE benefits to Plaintiff for a period of 15 months and 18 days – the amount totaling $66,568.09. (*Id*. at ¶ 77.) During the entire time State Farm was paying ALE, neither Plaintiff nor his contractor obtained a fire damage repair building permit, nor performed any fire damage repair work. (*Id*.)

Mr. Rosenbloom subsequently provided State Farm with a contents inventory for the Premises dated January 28, 2019, containing 17 pages of items and totaling $94,898.81 in claimed value for the fire damaged items, under Coverage B of the Policy (the "January 28, 2019 Contents Inventory List"). (*Id*. at ¶ 37.) On February 7, 2019, Mr. Rosenbloom provided State Farm with a list of additional damages in connection with the "Coverage A, Building Damage loss," above the amount State Farm had recently paid on January 21, 2019 (the "Additional Damages List") (*Id*. at ¶ 24.) State Farm sent the Additional Damages List to Mr. Seviour to

conduct a "builders meeting" to review the claimed additional damages. (*Id*.) On March 20, 2019, testing disclosed asbestos floor tile in Plaintiff's front left room, left bedroom, front right bedroom, right rear bedroom, living room, second floor right bedroom, and stairway, and siding of Plaintiff's home also tested positive for asbestos. (*Id*. at ¶ 26.) On March 20, 2019, CPR Restorations provided State Farm with an estimate for asbestos abatement in the amount of $25,898.50. (*Id*.)

On March 21, 2019, Mr. Condoleo, on behalf of State Farm, met with Champion at the Premises to conduct a "contents walk through" to verify that the items on the contents list were present in the home and damaged, which Plaintiff did not attend. (*Id*. at ¶ 38.) Following the contents walk through, Champion requested that State Farm release any hold on the contents that were contained on the inventory list and Mr. Condoleo (having completed the contents examination) obliged the request. (*Id*. at ¶ 39.) He testified as follows:

> The file note is a reference to my inspection of the contents, and that when I was contacted after that date by Linda and/or Glen of Champion Adjustment, that I had approved our handling of the contents. At that point whatever they wished to do, whether it was dispose of them, whether Mr. Becker wanted to keep them, whatever he wanted to do with those contents, we knew that the cost to clean, store, or try to salvage those, exceeded what the value of the items were. So we knew these were a total loss. So we agreed to the items on the list as being legitimately totaled.

(*Id*.) Mr. Rosenbloom concurred that once State Farm had completed the contents inspection on March 21, 2019, Mr. Condoleo released State Farm's hold on the contents, and they were released to Plaintiff to do with as Plaintiff wished. (*Id*. at ¶ 40.) At the time of the contents walkthrough and request to release the contents, State Farm had no knowledge that Plaintiff would later claim the contents list State Farm had received from Champion was incomplete nor that additional contents items would be claimed in the future. (*Id*. at ¶ 41.) Mr. Rosenbloom himself was unaware of the alleged incomplete nature of the contents inventory submitted to

State Farm and used in the Contents Inspection at the time the inspection took place. (*Id*. at ¶ 42.) Plaintiff first expressed dissatisfaction with the completeness of that initial inventory after the March 21, 2019, contents walkthrough was completed. (*Id*. at ¶ 43.)

On March 22, 2019, Stated Farm issued a payment for $25,898.50 to Plaintiff and CPR Restoration for asbestos abatement. (*Id*. at ¶ 32.) The subsequent "builders meeting" resulted in a revised building repair estimate totaling $213,238.40, less recoverable deprecation of $30,723.99, less the deductible of $1,000.00, leaving an actual cash value of $181,455.82, and State Farm made a supplemental "Coverage A, Building Damage" loss offer to Plaintiff in that amount on March 22, 2019 ("State Farm's March 22, 2019 Offer"), which Plaintiff accepted. (*Id*. at ¶ 25.)

On April 24, 2019, State Farm made subsequent payments for the Building Coverage A claim in accordance with the agreed upon revised building damage total of $213,238.40. (*Id.* at ¶ 27.) Specifically, State Farm issued a Payment in the amount of $21,931.34 to Mr. Becker and a payment in the amount of $1,399.87 for the 6% public adjuster's fee. (*Id*.) State Farm received a signed sworn proof of loss from Plaintiff in connection with the supplemental payment. (*Id*. at ¶ 28.) Mr. Rosenbloom testified that upon receipt of subsequent payment, he, as Plaintiff's representative, considered the Coverage A claim closed and complete. (*Id*. at ¶ 29.) Mr. Rosenbloom further testified that had Plaintiff made repairs to the Premises and found additional issues that were not included in the original evaluations that required additional funds, then the Coverage A amount could have been revisited. (*Id*. at ¶ 30.)

Toward the end of April 2019, Mr. Rosenbloom notified Mr. Condoleo verbally in a phone call that a supplemental contents inventory list would be provided as the initial inventory Mr. Rosenbloom had provided was incomplete. (*Id*. at ¶ 44.)  On April 30, 2019, Champion

9

presented to State Farm an April 18, 2019 invoice for the disposal of contents from the Premises, prepared by East End (*Id*. at ¶ 45-46.) Plaintiff admitted that the contents of the Premises were disposed of before Champion submitted the April 18, 2019 invoice to State Farm on April 30, 2019. (*Id*. at ¶ 47.) At no point did State Farm have direct contact with or issue any instruction or direction to East End. (*Id*. at ¶ 48.) State Farm had no contract with and exercised no control over East End. (*Id*. at ¶ 49.)

On June 11, 2019, the Building Department denied Plaintiff's June 6, 2019 Building Permit Application (*Id*. at ¶ 68), and issued a Notice of Objection outlining the following deficiencies:

> Confirm that all items noted as damaged in the T.O.H. Fire Inspection Report are addressed. See Town of Hempstead Fire Inspection Report enclosed with these objections for reference. It appears that improvements were made to the dwelling since time of construction. Provide building permit #'s or file separate applications to maintain second floor alterations, first floor alterations, first floor covered patio, and two sheds. File plumbing permit for the removal of the second floor kitchen. Clarify scope of work related to the mechanical room. What type of mechanical unit will be installed there and provide details/specs for same. Drawing Section A-A does not appear to reflect the actual condition as knee walls are not shown. A meeting with the Architect of Record is recommended.

(*Id*.) Plaintiff's contractor then submitted an update to the pending permit application, but failed to address the objections received in connection with the initial submission. (*Id*. at ¶ 69.)[2]

On September 13, 2019, State Farm paid $8,210 to Plaintiff for the agreed fair market rental value for the period of July 1, 2019, to August 31, 2019. (*Id*. at ¶ 73.) Plaintiff has admitted that

---

[2] The Building Department issued a second Notice of Objections letter on October 10, 2019, noting its Objections were identical to those contained in the June 11, 2019 letter. *(Id*. at ¶ 69-70.) Rather than address the repeated deficiencies noted in the Building Department Objections, Plaintiff and East End decided to seek a variance to maintain the non-permitted second floor living space on July 30, 2020. (*Id*. at ¶ 71.) Plaintiff and East End never obtained a building permit to perform fire damage repair work. (*Id*. at ¶ 72.)

he received $49,357.00 for ALE benefits in accordance with the agreement for fair market rental value representing 12 months of ALE benefits. (*Id*. at ¶ 74.)

C. **Plaintiff's Additional Inventory Claim**

On September 14, 2019, State Farm issued an offer on the contents claim under Coverage B as follows:

Contents Replacement Cost: $109,128.00
Less depreciation Cost: -$ 32,964.06
Subtotal $ 76,163.94
Less Previous Payment(s) -$ 15,000.00

***Amount Due to Policyholder***: $61,163.94

(the "September 14, 2019 Offer") (*Id*. at ¶ 50.)  That same day, State Farm paid Plaintiff for the contents disposal invoice previously received. (*Id*. at ¶ 51.)  On October 4, 2019, Champion provided State Farm with a contents "Discrepancy List" contending that the amounts set forth in the September 14, 2019 Offer for the items on the January 28, 2019 Contents Inventory List were inadequate. (*Id*. at ¶ 52.)  State Farm responded demanding documentation establishing the values claimed by Plaintiff for the contents items of disputed value. (*Id*. at ¶ 53.)

On October 23, 2019, after receiving no response from Plaintiff or Champion regarding any claimed discrepancy with respect to the January 28, 2019 Contents Inventory List, State Farm issued an Undisputed Loss Payment on the contents claim, in accordance with its September 14, 2019 Offer. (*Id*. at ¶ 54.)  Following State Farm's payment on the January 28, 2019 Contents Inventory List, Champion submitted, on November 19, 2019, a "Contents Addendum" list of approximately 90 items representing $156,448.98 in additional content claims demanded. (*Id*. at ¶ 55.)  The "Contents Addendum" list was accompanied by fire scene photos that did not depict the items claimed in the Contents Addendum. (*Id*. at ¶ 56.)  Upon Defendant's request that the items be exhibited in accordance with the Policy's terms and conditions, Mr.

11

Rosenbloom informed State Farm that the items had been previously discarded by East End at Plaintiff's request and could not be exhibited. (*Id*. at ¶ 57.)

In response, on November 26, 2019, State Farm issued a Notice Partial Denial and Disclaimer of insurance coverage for the Contents Addendum (hereafter, "Plaintiff's Additional Inventory Claim" or "Additional Inventory Claim"), due to failure to exhibit the items in question as required by the Policy's terms and conditions (the "November 26, 2019 Disclaimer") (*Id*. at ¶ 58.)  State Farm's Claim Activity Log specifically reflects the discussion of and issuance of the November 26, 2019 Disclaimer in the normal course of business contemporaneously with that date. (*Id*. at ¶ 126.)

State Farm's Claim Activity Log entries are date and time stamped at the moment of entry and cannot be altered or amended or added to, once entered into the system. (*Id*. at ¶ 127.) According to State Farm, "[i]t is not possible for a claim note discussing the creation of and issuance of a Notice of Denial & Disclaimer of Insurance Coverage to be created and 'back dated' into the system at any time as every entry is stamped with both the date and time at the moment of entry." (*Id*. at ¶ 128.) On January 31, 2020, State Farm closed Plaintiff's claim file. (*Id*. at ¶ 78.)

### D.  <u>The Examination Under Oath and Sworn Proof of Loss</u>

On May 15, 2020, Anthony Reitano, a public adjuster, contacted State Farm. (*Id*. at ¶ 79.) Mr. Reitano stated that he had been retained by Plaintiff to pursue additional ALE benefits and to address Plaintiff's Additional Inventory Claim, for which State Farm had previously denied insurance coverage. (*Id*.) On May 21, 2020, following a phone conversation with Mr. Reitano, State Farm agreed to reopen Plaintiff's previously denied Additional Inventory Claim, and demanded an Examination Under Oath ("EUO") as permitted by the Policy. (*Id*. at ¶ 80.)  State

Farm tasked Gerald Kirby, Esq. with taking the EUO. (*Id*.) By correspondence dated June 1, 2020, to Plaintiff and Reitano (sent via certified mail), Mr. Kirby directed Plaintiff to submit to an EUO in accordance with the Policy's terms. (*Id*. at ¶ 81.)  Mr. Kirby further directed Mr. Becker to provide certain documents to substantiate his. (*Id*.)

On June 30, 2020, in response to a request from Mr. Becker and his new public adjuster for reconsideration of the discontinuance of ALE benefits, State Farm made a one-time payment of $8,210.00. (*Id*. at ¶ 75.)  Per the agreement for fair market rental value, this represents two additional months of ALE benefits. (*Id*.) By correspondence dated July 24, 2020, Mr. Kirby notified Plaintiff that his EUO had been scheduled on August 14, 2020, and directed Plaintiff to bring certain documentation with him. (*Id*. at ¶ 82.)   Mr. Kirby offered that Plaintiff's EUO could be conducted via remote video link. (*Id*.) Mr. Kirby further warned Plaintiff: "To date, neither the Sworn Statement in Proof of Loss in support of your [Additional Inventory Claim], nor the documents and records demanded in the letter have been produced. [T]he 60-day time limit for your compliance with the Proof of Loss submission in support of your claim remains in force." (*Id*. at ¶ 83.)

On August 13, 2020, Plaintiff called Mr. Kirby and requested that the EUO be rescheduled. (*Id*. at ¶ 84.)  By correspondence dated August 31, 2020, Mr. Kirby rescheduled Plaintiff's EUO for September 14, 2020. (*Id*. at ¶ 85.)  On the scheduled date of the EUO, September 14, 2020, Plaintiff called Mr. Kirby and requested the EUO again be adjourned, and a new date established. (*Id*. at ¶ 86.)  By correspondence dated September 24, 2020, Mr. Kirby rescheduled Plaintiff's EUO to October 28, 2020. (*Id*. at ¶ 87.)  Plaintiff thereafter retained the law firm of Brian M. Giehl, Esq. to represent his interests. (*Id*. at ¶ 88.)  Mr. Giehl asked Mr. Kirby to adjourn the October 28, 2020 EUO so that he could meet with his client, and Mr. Kirby

granted Mr. Giehl's request, adjourning the EUO until November 5, 2020. (*Id*.) Mr. Giehl subsequently called Mr. Kirby and requested the EUO be adjourned again, and a new date established. (*Id*. at ¶ 89.)

By correspondence dated November 6, 2020, Mr. Kirby scheduled Mr. Becker's EUO, for a fifth time, for November 10, 2020 at 10:00 AM, with no further permissible adjournments. (*Id*. at ¶ 90.)  Plaintiff appeared at the November 10th EUO, however, due to his own tardiness, the EUO was not completed on that date. (*Id*. at ¶ 91.)  By correspondence dated November 10, 2020, Mr. Giehl made a formal request that all policy time limitations be tolled for 180 days to permit further negotiations toward resolution of the claim. (*Id*. at ¶ 92.)  By correspondence dated December 2, 2020, Mr. Kirby responded to the tolling request notifying Mr. Giehl that he did not have authority to waive the policy time limit provisions. (*Id*. at ¶ 93.)

On December 2, 2020, Mr. Kirby sought to establish a date for the continuation of Plaintiff's EUO, and requested documents discussed by Mr. Becker during the first portion of his EUO on November 10th. (*Id*. at ¶ 94.)  On December 8, 2020, Mr. Kirby spoke via telephone with Mr. Giehl whom advised that he wished to review the December 2, 2020 letter with Plaintiff and would send a formal reply. (*Id*. at ¶ 95.)  On December 31, 2020, with no reply received, Mr. Kirby again wrote to Mr. Giehl seeking to complete Plaintiff's EUO. (*Id*. at ¶ 96.)  Mr. Kirby warned: "The insured's failure to complete the Examination Under Oath can constitute a material breach of the policy and stand as a basis for the denial of the claim. If I do not hear from you within ten (10) days of the date hereon to schedule the insured's continued Examination Under Oath, the insured's claim can be denied by State Farm as a consequence of that decision." (*Id*.)

After further negotiations with Mr. Giehl, Mr. Kirby scheduled the resumption of Plaintiff's examination under oath for April 1, 2021. (*Id*. at ¶ 97.)  On March 29, 2021, two days

before the EUO, Mr. Giehl withdrew from representing Plaintiff through motion to this Court. (*Id.* at ¶ 98; ECF No. 7; Electronic Order dated May 10, 2021.)  On April 21, 2021, Mr. Kirby contacted Plaintiff, who unrepresented at the time, and arranged to resume his EUO on June 2, 2021. (*Id.* at ¶ 99.)  On May 10, 2021, Maranda Fritz Esq. substituted as counsel for the Plaintiff. (*Id.* at ¶ 100; Electronic Order dated May 10, 2021.) On June 2, 2021, date of the scheduled resumption of Plaintiff's EUO, Ms. Fritz requested an additional adjournment based primarily on Plaintiff's claimed health conditions. (*Id.* at ¶ 101.) Ms. Fritz agreed to a June 23, 2021 date for continuation of Plaintiff's EUO. (*Id.* at ¶ 102.) However, on that date, the undersigned held a conference in this matter, and the EUO was adjourned to June 30, 2021 to allow counsel to attend the conference. (*Id.*; ECF No. 16.)

On June 28, 2021, Plaintiff's attorney indicated that Plaintiff was incapable of resuming his EUO due to a medical condition, and produced a note from his doctor, Roziallya Vernikov M.D. (*Id.* at ¶ 103.) On June 30, 2021, Plaintiff failed to appear for his scheduled EUO, and Mr. Kirby placed the non-appearance on the record. (*Id.* at ¶ 104.)

In connection with the reopening of Plaintiff's Additional Inventory Claim, State Farm required Plaintiff to submit a Sworn Statement in Proof of Loss (hereafter, the "POL"). (*Id.* at ¶ 106.) State Farm provided Plaintiff a blank POL Form for his convenience. (*Id.* at ¶ 107.) Mr. Becker willfully refused to fill out and return the POL. (*Id.* at ¶ 108.) State Farm, through its counsel, Mr. Kirby, notified Plaintiff on several occasions both in e-mail and in writing that he was required to submit the POL. (*Id.* at ¶ 109.) Mr. Kirby's July 24, 2020 correspondence specifically stated:

This will serve as a follow-up to this firm's letter to you, dated June 1, 2020. To date, neither the [POL] in support of your supplemental personal property claim, nor the documents and records demanded in the letter have been produced. So that there is no misunderstanding on this point, the 60-day time limit for your compliance with the [POL] submission in support of your claim remains in force.

(*Id*. at ¶ 110.) Mr. Kirby's August 14, 2020 e-mail correspondence specifically stated:

This is to advise you that State Farm is not waiving any of the policy requirements of your State Farm policy including the time requirements for an insured to file a [POL] when demanded.

(*Id*. at ¶ 111.) Based upon Mr. Becker's failure to resume his EUO, and his failure to submit a POL, State Farm issued a September 14, 2021 Notice of Denial and Disclaimer of insurance coverage for his re-opened Additional Inventory Claim. (*Id*. at ¶ 113.)

On February 5, 2021, Plaintiff sold the Premises in its "as is" fire damaged condition. (*Id*. at ¶ 31.) In addition to the instant case, Plaintiff has filed a related lawsuit in Nassau County Supreme Court, alleging civil conspiracy and fraud, captioned *Gregg Becker v. Hunter S. Rosenbloom et. al*, Index Number 615052/2022. (*Id*. at ¶ 145.) In his Complaint and subsequent Declarations to the Court in that case, Plaintiff "has affirmed that many of the items" in his Additional Inventory Claim "were items that remained in the Premises but were undamaged by fire and were instead disposed of by his contractor." (*Id*. at ¶ 146.)

## II.    PROCEDURAL HISTORY

On November 11, 2020, Plaintiff filed the present lawsuit against State Farm through the filing of a Verified Complaint (the "Complaint") in the Supreme Court of the State of New York Nassau County. (*Id*. at ¶ 114; ECF No. 1-1 at 3.) Plaintiff asserts three causes of action: (i) breach of contract and bad faith ("Count I"), (ii) fraud ("Count II"), and (iii) a violation of New York General Business Law ("GBL") §349 ("Count III"). (*Id*. at ¶ 116; ECF No. 1-1 at 8, 12, 14). Plaintiff specifically alleges State Farm failed to provide coverage owed under the policy,

engaged in improper claims handling, presented "fraudulent, deceptive and falsified documentation" to Plaintiff in an attempt to avoid liability – specifically, the November 26, 2019 Disclaimer, "knowingly misrepresent[ed] pertinent facts and policy provisions relating to coverages at issue[,]" and "fail[ed] to adopt reasonable standards for the prompt investigation of claims arising under its policies." (*Id*. at 8-16). Defendant subsequently filed a Notice of Removal on December 8, 2020, removing the action to this Court. (*Id*. at ¶ 115; ECF No. 1 at 1.) Subject matter jurisdiction is premised upon diversity, 28 U.S.C. § 1332(a), which the undersigned concludes is appropriate. (*Id.* at 1-2.)

On December 10, 2020, Defendant filed an Answer, and with leave of Court, an Amended Answer on November 3, 2021. (*Id*. at ¶ 117; ECF Nos. 2, 24). The Amended Answer included additional Affirmative Defenses, including the Plaintiff's failure: (i) to submit a POL, (ii) to appear for an EUO as required at Section I – Condition "Your Duties after Loss," paragraphs 2(b) and (c) of the Policy, and (iii) to the extent replacement cost value was sought, to re-build the damaged premises and replace the damaged property within 24 months of the date of the fire. (*Id*. at ¶ 118; ECF No. 24 at 5-9).

On January 24, 2022, the Court entered a discovery Scheduling Order, requiring the identification of case-in-chief experts and service of Rule 26 disclosures by June 3, 2022, and the identification of rebuttal experts and service of Rule 26 disclosures by July 8, 2022. (*Id*. at ¶ 119; ECF No. 33). Relevant here, Plaintiff appeared for a three-hour deposition on February 17, 2022 (ECF No. 34), and, on March 31, 2022, the undersigned ordered Plaintiff "to appear for an additional four hours of [deposition] testimony[,]" on April 8, 2022, in response to Defendant's request to depose Plaintiff for an additional seven hours. (ECF No. 35.) To date, Plaintiff has not

identified an expert nor served a Rule 26 disclosure in connection with his liability or damage claims. (*Id*. at ¶ 120.)

On March 21, 2023, the undersigned held a Settlement Conference, in which Plaintiff failed to appear (ECF No. 77), so the matter was rescheduled for April 28, 2023.  A settlement was not reached. (*See* Electronic Order date April 28, 2023.) The undersigned set a briefing schedule for Defendant's anticipated motion for summary judgment and returned the case to the Hon. Joan M. Azrack for further proceedings. (*Id*.; Electronic Order dated May 12, 2023.)

On July 28, 2023, Defendants moved for summary judgment on all three Counts asserted in the Complaint (ECF No. 81-2) and filed: Plaintiff's Opposition to Defendant's Motion (ECF No. 81-78), Plaintiff's Cross-Motion to Strike certain portions of Plaintiff's Rule 56.1 Statement (ECF No. 81-76, 78), and Defendant's Reply to Plaintiff's Opposition (ECF No. 81-156), in accordance with the undersigned's bundle-filing rules. (ECF No. 81.)   On August 3, 2023, and August 21, 2023, Plaintiff's counsel – Maranda Fritz, Esq. and Rebecca Brazzano, Esq. – moved to withdraw as Plaintiff's counsel (ECF Nos. 82, 85), which was subsequently granted by the undersigned on September 11, 2023. (ECF No. 88.)[3] On October 18, 2023, Judge Azrack referred Defendant's motion for summary judgment (ECF No. 81) to the undersigned for a Report and Recommendation. (*See* Electronic Order dated October 18, 2023.)

---

[3] The undersigned set Plaintiff's deadline to secure new counsel and have new counsel file a notice of appearance on ECF for November 3, 2023. (ECF No. 88.) To date, Plaintiff has not obtained new counsel. Since the motion was fully briefed by counsel while Plaintiff was represented, the liberal standard of review ordinarily accorded pro se litigants is inapplicable. *See McConnell v. United States*, No. 14-CV-5355 (VEC), 2017 WL 167917, at *2 (S.D.N.Y. Jan. 17, 2017) (since briefs were filed by counsel they are not considered "*pro se* submissions").

III.    **THE PARTIES' CONTENTIONS**

A. **Defendant's Motion for Summary Judgment**

Defendant argues summary judgment should be granted in its favor with respect to all three Counts asserted in the Complaint because: (i) Plaintiff failed to demonstrate that State Farm breached its coverage obligations under Coverage A, B, or C or otherwise acted in bad faith; (ii) that *Plaintiff* was the one who breached the policy cooperation agreement provision by refusing to appear for an EUO and declining to serve a POL with respect to his Additional Inventory Claim, "thereby negating any further coverage obligation" of State Farm Coverage A, B and C; (ii) Plaintiff has served no expert disclosure pursuant to FRCP 26 to prove any claim of coverage under Coverage A, B, and/or C, and cannot otherwise acts as his own expert witness to prove coverage in this case; (iii) Plaintiff's fraud claim is unsupported by admissible evidence; and (iv) Plaintiff's GBL §349 claim fails as a matter of law. (ECF No. 81-2 at 2.)

With respect to Plaintiff's breach of contract claim, Defendant reiterates that there were three separate policy coverages under which Plaintiff collected – Coverages A, B and C. (ECF No. 81-2 at 7.) Under Coverage A, for "Building Cash Value," Defendants state Plaintiff received a total of $207,354.32, exclusive of the costs of demolition, temporary electrical supply, boarding, stabilization, and asbestos testing/remediation. (*Id.*) In connection with Plaintiff's Coverage A claim, State Farm argues Plaintiff signed the Sworn Proofs of Loss, "fully settling any claim under that Coverage." (*Id.*) Specifically, in regards to Coverage A, State Farm contends: (i) Mr. Becker kept the full amount of the settlement, never applying any part of it to repair the home; (ii) Plaintiff later sold the Premises "as is" for $400,000; and (iii) in this litigation, Mr. Becker never served an expert disclosure pursuant to FRCP 26 establishing that Stat Farm's expert appraiser, Mr. Seviour, incorrectly calculated or understated the building

repair estimate of $207,354.32. (*Id.*) To this end, State Farm contends it fully complied with its obligations under Coverage A of the Policy.

In connection with Coverage B for "Personal Property," Defendant reiterates that Champion submitted a contents inventory of personal items – which was adjusted by State Farm – who determined the contents estimate has a replacement value of $109,128.00, less depreciation of $32,964.06, resulting in a total sum owed of $76,163.94, which State Farm paid to Plaintiff in full. (*Id.*) State Farm further argues that Plaintiff and Champion later disposed of the contents of the Premises by hiring East End to conduct the property removal, as admitted by Plaintiff. (*Id.* at 7-8.) When Plaintiff submitted his additional inventory claim, "seeking over $150,000 for ninety (90) additional items not on the first inventory," State Farm argues it denied and disclaimed coverage for those items because Plaintiff failed to produce the additional items for inspection under the terms of the Policy. (*Id.*) State Farm claims that although it "denied the claim for additional property not exhibited, it later agreed to re-open the claim" on the condition that Plaintiff appear for an EUO and submit a POL in connection with the claim. (*Id.* at 8.) When Plaintiff failed to do so,[4] State Farm argues it properly denied coverage for Plaintiff's Additional Inventory Claim under Coverage B. (*Id.*)

With regards to Coverage C for ALE benefits, Defendant reiterates that the Policy provided a maximum of 24 months for expenses covering the period in which Plaintiff could not occupy the Premises, and specifically required Plaintiff to "diligently pursue repairs to remain

---

[4] Defendant notes that Plaintiff "never served a FRCP 26 disclosure identifying an expert physician to testify at trial that [he] had a legitimate medical reason for failing to appear for the EUO[,]" and "[d]espite Plaintiff's representation that he lacked the physical and emotional ability to submit to sworn testimony, he attended his own deposition in this litigation on February 17, 2022, and his continuation deposition of April 15, 2022 (seven hours over two days), and also attended every one of the depositions of the five (5) other deponents in this matter." (*Id.*; ECF No. 81-1 at ¶ 105.) Defendant argues that "[n]o medical issue was ever raised for that testimony" or those appearances. (*Id.*)

eligible for the ALE benefits." (*Id*.) State Farm contends that it paid Plaintiff for "15 months and 18 days of ALE expenses for a total of $66,568.09" despite Plaintiff "never [having] obtained a single building permit" and "never [having] undertook any repairs to the Premises." (*Id*. at 8-9.) As such, State Farm maintains that it paid Plaintiff what he was owed under Coverages A, B, and C, respectively, and that Plaintiff has not otherwise provided any evidence "of estimates, valuations, expert opinions, repair costs," and/or content replacement costs, to suggest that the amounts paid by State Farm were in sufficient or that he was owed additional coverage under the Policy. (*Id*. at 9.) With respect to Plaintiff's "bad faith" claim, State Farm contends there is "no separate cause of action in tort for an insurer's 'bad faith' failure to perform its obligations under an insurance contract." (*Id*. at 31) (citing *Continental Cas. Co. v Nationwide Indem. Co*., 792 N.Y.S.2d 434 (N.Y. App. Div. 1st Dep't 2005)).

With regard to Plaintiff's fraud claim, Defendant argues that Plaintiff has not presented any evidence or support for his contention that State Farm "fraudulently prepared and presented" the November 26, 2019 Disclaimer "in preparation for the November 2020 EUO or litigation to avoid payment under the policy." (*Id*. at 21.) State Farm contends its "Claim Activity Log" specifically "reflects the discussion of and issuance" of the November 26, 2019 Disclaimer "in the normal course of business contemporaneously with that date[,]" and "all Claim Activity Log entries are date and time stamped at the moment of entry and cannot be altered or amended or added to, once entered into the system." (*Id.* at 22.) State Farm maintains it "is not possible for a claim note to be created and 'back dated' into the system at any time as every entry is stamped with both the date and time at the moment of entry." (*Id*.) State Farm further claims: (i) the November 26, 2019 Disclaimer was issued to Plaintiff and his public adjuster at their applicable addressed of record; (ii) the content of the document is true, as State Farm did in fact disclaim

coverage for Plaintiff's Additional Inventory Claim; and (iii) there is "no admissible evidence that the document was 'fabricated' by State Farm in preparation for the EUO a year later." (*Id*.)

Even if this Court were to presume the November 26, 2019 Disclaimer were fraudulently created, Defendant argues "Plaintiff has provided no evidence of his reliance upon the letter nor damages flowing from his punitive reliance." (*Id*. at 23.) Specifically, State Farm argues that Plaintiff "timely filed this lawsuit and took whatever other legal action he felt was appropriate[,]" and, as Plaintiff "has identified no change in any course of conduct he took in reaction to the existence of" the November 26, 2019 Disclaimer, he "has failed to identify any damages which were caused by that document[,]" and therefore, "his fraud claim fails as a matter of law." (*Id*.)

Finally, with respect to Plaintiff's GBL Section 349 claim, Defendant argues that Plaintiff's claims under the GBL "are limited solely to [State Farm's] communication with [Plaintiff]" and are specifically based on Plaintiff's contention that State Farm "did not return his phone calls" in connection with his claim, which, is "insufficient for a NY GBL §349 claim." (*Id*. at 24.) Specifically, under the GBL, State Farm contends that Plaintiff was required to – and failed to – show that State Farm "has a general business practice of not promptly returning phone calls." (*Id*.)[5] Rather, State Farm argues it produced evidence in discovery "indicat[ing] [it] has

---

[5] During discovery, State Farm demanded Plaintiff produce "[a]ny and all call logs which reflect records of phone calls or text messages to any person or entity that in any way referenced the 105 Friends Lane fire loss including any insurance claims connected with that fire loss and any remediation, stabilization, construction and/or repairs of the property following the November 2018 fire." (ECF No. 81-77 at ¶ 139.) Plaintiff failed to produce his call log. (*Id*. at ¶ 140.) The only evidence Plaintiff has produced of the unreturned calls was a single audio recording of a voice mail left for Mr. Condoleo on November 28, 2019. (*Id*. at ¶ 141.) At the time of Mr. Becker's alleged unanswered phone calls, State Farm claims "he had no active insurance claim or policy with [State Farm,]" as "[t]he claim[s] he presented under his previous policy [were] already paid in part, [and] denied in part[,] and [were] no longer pending." (ECF No. 81-2 at 25.) Thus, State Farm contends, Plaintiff "suffered no injury as a consequence of any alleged failure to return phone calls and his claim is not actionable under the General Business Law." (*Id*.)

the exact opposite general business practice in place, and that phone calls are to be returned promptly." (*Id.*)[6]

### B. <u>Plaintiff's Cross-Motion to Strike and Opposition</u>

Along with his Opposition to Defendant's Motion for Summary Judgment (ECF No. 81-78), Plaintiff filed a Cross-Motion to Strike certain portions of Defendant's Rule 56.1 Statement – specifically, paragraphs: 2, 3, 4, 7, 8, 15, 28, 53, 66-71, 80, 82, 95-96, 99, 100, 103, 109-110, 115-118, 120-121, 123, 133, 142-143, 145-146, and certain Exhibits attached to the Declaration of Joesph DeDonato, Esq. in Support of Defendant's Motion for Summary Judgment (the "DeDonato Declaration"). *See* ECF Nos. 81-76, 81-5; *see also* 81-78 at 13 (requesting the Court "strike down the entirety of [State Farm's] 56.1 paragraphs 2, 3, 4, 7, 8, 15, 28, 53, 66-71, 80, 82, 95-96, 99, 100, 103, 109-110, 115-118, 120-121, 123, 133, 142-143, 145-146, alongside the accompanying hearsay inadmissible exhibits labeled B, D, E, G, O, GG, HH, II, JJ, KK, LL, RR (incomplete), YY (violates of FRE 408), GGG, DDD (violative of Judge Wicks' Order), III, LLL, MMM and OOO, all for their lack of merit and admissibility.").

Plaintiff contends that the DeDonato Declaration "improperly includes exhibits, hearsay evidence, and citations that do not support the statements that are made" in State Farm's Rule 56.1 Statement, and Defendant's Rule 56.1 Statement contains statements that are "not material, not factually accurate, misleading, or all of the above." (ECF No. 81-78 at 10.) Plaintiff further argues that "this Court has the authority to disregard any legal or materiality arguments" made by State Farm in its "defective" Rule 56.1 Statement. (*Id.*) Finally, Plaintiff argues Defendants 56.1 Statement and Exhibits attached to the DeDonato Declaration disclose "confidential" and

---

[6] State Farm contends it "has a communication policy which is in full compliance with the mandates of" New York Insurance law. (ECF No. 81-1 at ¶ 133.)

"private medical information about Plaintiff[,]" in violation of the undersigned's Confidentiality Stipulation and Order[7], which "serves no rational or legitimate purpose other than to subject him to harassment and humiliation." (ECF No. 81-78 at 19.)

In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that State Farm: (i) violated its duties under New York Insurance Law Section 2601 by engaging in unfair settlement practices; (ii) repudiated the insurance agreement between the parties and committed fraud by ordering the destruction of Plaintiff's property in March of 2019 and then lying about it; (iii) acted in bad faith in requiring Plaintiff to appear for an EUO and submit a POL with respect to his Additional Inventory Claim; (iv) committed fraud by lying about issuing Plaintiff the November 26, 2019 Disclaimer and fabricating the Disclaimer in order to avoid providing coverage under the policy; and (v) in violation of the GBL, "as a matter of practice, misled consumers and paid insufficient sums on claims pursuant to its standard form contract[,]" and refused to return Plaintiff's calls in connection with his insurance claims. (ECF No. 81-78 at 25-26, 29-30.)

---

[7] On October 26, 2021, the undersigned so-orderd a Confidentiality Stipulation and Order which provided, in relevant part, "(a) The following documents and information may be designated as "confidential," provided such documents are not public and have not been previously disclosed by the producing party to anyone except those in its employment for those retained by it: [ . . .] Medical and Legal Records, including medical files and reports. This Stipulation and Order does not apply to medical records, reports, and files of plaintiff Gregg M. Becker if the plaintiff declined to testify at a deposition due to any medical condition or medical reason of any kind. Plaintiff reserves the right to file a Letter Motion to seal the record from public disclosure of any medical record or medical testimony should a motion to compel deposition be filed." (ECF No. 21). As a preliminary matter, the undersigned notes that Plaintiff is referring to paragraph 103 of Defendant's Rule 56.1 Statement and Exhibit DDD, attached to DeDonato Declaration, which contain statements regarding Plaintiff's medical condition made by his doctor. (ECF No. 81-1 at ¶103; ECF No. 81-61). For the reasons explained further below, the undersigned recommends that portions of paragraph 103 and stricken from the record (*see infra* I.B.), however, does not find that Defendant violated the undersigned's Confidentiality Order. The note at issue from Plaintiff's doctor was produced by Plaintiff to State Farm prior to his commencement of the instant action. (ECF No. 81-1 at ¶ 103.)

Overall, Plaintiff contends that "[i]nstead of responding to its insured and properly addressing his claims, [State Farm] actively and with purpose breached the conditions of the policy and repudiated the policy and made every effort to prevent Plaintiff from receiving what he was entitled[,]" and, notably, that State Farm ordered the destruction of Plaintiff's property in March 2019 in an effort to make it "literally impossible for Plaintiff to further comply with post loss duties under the contract after March 21, 2019" – specifically, his duty to appear for the EUO and submit a POL. (ECF No. 81-78 at 7.)

## C.  **Defendant's Opposition to Plaintiff's Cross-Motion to Strike and Reply to Plaintiff's Opposition**

Defendant opposes Plaintiff's Motion to Strike solely on the grounds that FRCP 56 and Local Rule 56.1, according to Defendant, do not "permit an opposing party to file a Motion to Strike portions of [the movant's] Statement of Material Facts[,]" and that "[P]laintiff fails to cite a single court rule, code, statute or legal authority that authorizes such a motion." (ECF No. 81-157 at ¶ 5.)

In its Reply to Plaintiff's Opposition to Defendant's summary judgment motion, Defendant argues: (i) Plaintiff has not raised a genuine issue of material fact on the issue of his failure to comply with Policy conditions – specifically, his duty to appear for an EUO and submit a POL; (ii) summary judgment should be granted in Defendant's favor because Plaintiff has served no expert disclosures pursuant to FRCP 26 to support his claim that State Farm acted improperly in investing, adjusting and paying his claim, or to support his damages claim; (iii) to the extent Plaintiff seeks to rely on upon spoliation (*i.e.*, that State Farm ordered the destruction of his property), Plaintiff has not met his burden to establish that claim; (iv) Plaintiff has not

established a violation of GBL Section 349; and (v) Plaintiff has failed to show Defendant committed fraud. (ECF No. 81-156 at 6.)

With respect to the EUO and the POL, Defendant argues that Plaintiff claims he could not appear for the EUO because "he was medically incapable of providing testimony[,]" yet Plaintiff "failed to designate a single physician by an FRCP 26 expert disclosure to testify to that defense at trial." (*Id*.) State Farm maintains that it "re-opened [Plaintiff's] claim in accordance with the applicable policy provisions by requesting a complete EUO[,]" a "well-established industry practice [that] permits an insurer to identify, verify, and substantiate insurance claims." (*Id*.) State Farm further notes that "[d]espite a contractual condition that required Mr. Becker to appear for an EUO as often as reasonably required, Mr. Becker did not complete an EUO despite seven (7) adjournments that spanned more than ten (10) months." (*Id*.) State Farm argues that Plaintiff has not otherwise presented a physician to testify at trial to his claimed medical condition to excuse his appearance at the EUO. (*Id.* at 2.)

With regards to Plaintiff's breach of contract claim, State Farm further argues that Plaintiff "has not raised any defense on his failure to submit a [POL]" and "fails to address the lack of a single FRCP 26 expert disclosure on the issues of liability and damages[,]" specifically – "[t]here is no expert to opine that [State Farm] purportedly acted incorrectly during the investigation, adjustment, and payment of Mr. Becker's claim . . . [l]ikewise, there are no experts to opine on the value of Mr. Becker's real and personal property, for which the Defendant paid hundreds of thousands of dollars to him, was incorrectly calculated." (*Id*. at 6-7.)

With respect to Plaintiff's claim that State Farm "ordered" the destruction of his property in order to avoid payment, State Farm maintains that Plaintiff's personal property "was deposed of by his own contractor at the direction of his public adjuster . . . [n]either of these two entities

had any form of relationship with [State Farm] . . . [and] Plaintiff has absolutely no evidence that [State Farm] disposed his personal property." (*Id*. at 16.) Finally, Defendant argues that Plaintiff "has proffered no admissible evidence" that State Farm "has a general business practice of forcing claimants to file suit before paying on a valid claim" in violation of the GBL, or that Defendant committed fraud by "fabricat[ing]" a notice of denial and disclaimer of insurance coverage in connection with his Additional Inventory Claim. (*Id*. at 17-19.)

## DISCUSSION

I.    **PLAINTIFF'S MOTION TO STRIKE**

A. **Legal Standard**

"Federal Courts have discretion in deciding whether to grant motions to strike" under Fed. R. Civ. P. 12(f). *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019). To succeed on a Rule 12(f) motion, a movant generally must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

Specifically, under Federal Rule of Civil Procedure 12(f), the district court may strike material from filings on the grounds that such material is "redundant, immaterial, impertinent, or scandalous. . . [and] [b]ecause such rejected or stricken material is not relevant to the performance of the judicial function[,] it would not be considered a judicial document[,] and would enjoy no presumption of public access." *Brown v. Maxwell*, 929 F.3d 41, 51-52 (2d Cir. 2019) (internal citations omitted); *see also Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters.").

Scandalous allegations are those which "impugn the character" of the movant. *Brown*, 929 F.3d at 51 n.42; *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15-cv-7425, 2016 WL 3144053, at *3 (S.D.N.Y. Apr. 11, 2016) ("[T]he grounds for a motion to strike ... do not include falsity of the matter alleged. . . [t]he question is whether the allegations impugn [the movant's] character."); *see Bartlett v. Societe Generale De Banque Au Liban SAL*, No. 19-CV-7 (CBA) (TAM), 2021 WL 8155950, at *2 (E.D.N.Y. Aug. 5, 2021) (granting motion to strike on the grounds that the movant was accused of illegal conduct, regardless of whether the accusations were true).

Under Local Rule 56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The opposing party must submit a statement responding to each numbered paragraph, and can include additional paragraphs "to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Statements by each party "must be followed by citation to evidence which would be admissible" under Fed. R. Civ. P. 56(c). Local Rules 56.1(d). "Where . . . the record does not support the assertions in a 56.1 statement, those assertions should be disregarded, and the record viewed independently" because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz. v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Notably, Rule 56, "as amended in 2010, allows that '[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.'" *Shannon v. Credit Agricole Secs. (USA), Inc.*, 2021 U.S. Dist. LEXIS 52329, at *10 (S.D.N.Y. Mar. 19, 2021) (quoting Fed. R. Civ. P. 56(c)(2)). And "[a]s the Advisory

Committee Notes attendant to that provision make clear, '[t]here is no need to make a separate motion to strike' in addition to that objection." *Id*. (quoting Advisory Committee Note to Fed. R. Civ. P. 56). Put simply, "the Court 'need not engage in separate analysis of the motion to strike.'" *Id*. (quoting *Codename Enters v. Fremantlemedia North Am., Inc.*, 2018 U.S. Dist. LEXIS 110284, at *11 (S.D.N.Y. Jan. 12, 2018)); *see Pharamacychecker.Com v. N.A. of Bds. Of Pharm*., 2023 U.S. Dist. LEXIS 66888, at *8–9 (S.D.N.Y. Mar. 28, 2023) (collecting cases where the court simply ignored the paragraphs lacking factual support or relying on inadmissible evidence).

To this end, "[a] party seeking to strike a Rule 56.1 statement 'bears a heavy burden, as courts generally disfavor motions to strike.'" *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 U.S. Dist. LEXIS 95531, at *5 (S.D.N.Y. July 7, 2014) (quoting *Pharm., Inc.*, 2007 U.S. Dist. LEXIS 74384, at *2). "Indeed, courts in [the Second] Circuit frequently deny motions to strike paragraphs in Rule 56.1 statements, and simply disregard any improper assertions." *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc*., 2012 U.S. Dist. LEXIS 174295, at *19 (E.D.N.Y. Dec. 7, 2012) (collecting cases), *report and recommendation adopted in relevant part,* 2013 U.S. Dist. LEXIS 45949 (Mar. 28, 2013); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) ("[T]he Court can also disregard legal conclusions or substantiated opinions in a Local Rule 56.1 statement."); *PharmacyChecker.com*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *3 (collecting cases) (applying the same method with respect to exhibits and affidavits submitted in support of summary judgment).  The burdenand  is considered a heavy one rests with the movant.  *See Su v. Top Notch Home Designs Corp.*, 2023 WL 8878553 at *4 (E.D.N.Y. Dec. 22,

2023) (denying motion to strike 56.1 statement).  It is against this backdrop that the undersigned

considers the motion to strike.

**B.  Statements Regarding Plaintiff's Medical Condition**

In support of his Cross-Motion to Strike, Plaintiff argues that portions of Defendant's

56.1 Statement and Exhibits attached to the DeDonato Declaration disclose "confidential" and

"private medical information about Plaintiff[,]" which "serve[] no rational or legitimate purpose

other than to subject him to harassment and humiliation." (ECF No. 81-78 at 19.) With respect to

this point, the undersigned finds that paragraph 103 of Defendant's Rule 56.1 Statement, which

reads:

> On June 28, 2021, Mr. Becker's attorney indicated that Mr. Becker was incapable of resuming his EUO and produced a two sentence note from Roziallya Vernikov M.D. that stated: Greg Becker has been a client of CN Guidance since January of 2020 for treatment of Bipolar I Disorder and ADHD. At this time I feel that Greg's symptoms as related to his mental health condition would interfere with his ability to concentrate, focus, and recall sufficient information to provide sworn testimony in a legal matter.

(ECF No. 81-1 at ¶103), and Defendant's Exhibit "DDD" depicting the note from Roziallya

Vernikov M.D. (ECF No. 81-61), contain impertinent, specific, private, and otherwise irrelevant

medical information about Plaintiff – specifically, Ms. Vernikov's statements that Mr. Becker

"has been a client of CN Guidance since January of 2020 for treatment of Bipolar I Disorder and

ADHD[,]" and that she "feel[s] that Greg's symptoms as related to his mental health condition

would interfere with his ability to concentrate, focus, and recall sufficient information to provide

sworn testimony in a legal matter." (*Id*.)

While it may be relevant that State Farm received a letter from Plaintiff's doctor before

his failure to appear for the EUO, the specifics of Plaintiff's medical condition are not otherwise

relevant to his claims against Defendant. Accordingly, because paragraph 103 and Exhibit DDD

contain material that is "immaterial, impertinent, or scandalous[,]" and potentially prejudicial to Plaintiff, the undersigned recommends this Court grant Plaintiff's Cross-Motion to Strike in part (*see infra*, Section I.C), and strike the statement made by Roziallya Vernikov M.D. contained in paragraph 103 of Defendant's Rule 56.1 Statement and Exhibit DDD. *Brown*, 929 F.3d 41, 51-52; *Roe*, 151 F. Supp. 2d at 510.

### C.  The Remainder of Defendant's 56.1 Statement

The undersigned finds Plaintiff's Cross-Motion to Strike with respect the remaining portions of Defendant's 56.1 Statement is superfluous. *First*, Plaintiff already had the opportunity to – and did – object to portions of Defendant's Rule 56.1 Statement in his Opposition to Defendant's Rule 56.1 Statement (ECF No. 81-77), and, therefore, it was unnecessary for Plaintiff to make a separate motion to strike objecting to portions of Plaintiff's Rule 56.1 Statement on the same grounds. *See Shannon*, 2021 U.S. Dist. LEXIS 52329, at *10.

*Second*, Plaintiff mainly objects to specified portions of Defendant's Rule 56.1 Statement on the grounds that those portions are "not material, not factually accurate, misleading, or all of the above" and make legal arguments. (ECF No. 81-78 at 10.)  However, even if this Court agrees, the Court can simply disregard those statements which it finds improper in deciding Defendant's motion for summary judgment. *See Pharamacychecker.Com,* 2023 U.S. Dist. LEXIS 66888, at *8–9. That is, the arguments advanced in Plaintiff's Cross-Motion to Strike are the very same arguments that could be made in the summary judgment context, urging the Court to disregard in considering the motion. With the exception of a few statements (*see supra*, Section I.B.), the undersigned finds that Defendant's Rule 56.1 Statement does not otherwise contain material that is "redundant, immaterial, impertinent, or scandalous." *Brown*, 929 F.3d 41, 51-52. Rather, the statements at issue in Defendant's 56.1 Statement discuss: (i) the fire; (ii) the

31

Policy; (iii) State Farm's claims handling; (iv) Plaintiff's additional inventory claim; and (v) the EUO and the POL, all of which are material and relevant to Plaintiff's breach of contract, fraud, and GBL claims against Defendant.

While legal arguments and legal conclusions, as well as factual statements unsupported by evidence, may be considered inappropriate to include in a 56.1 statement and may be properly disregarded by the Court in deciding motions for summary judgment, Plaintiff has not sufficiently demonstrated that the remaining statements at issue here should be stricken from the record. *Roe*, 151 F. Supp. 2d at 510; *Shannon*, No. 17-CV-00667 (AJN), 2021 WL 1063183, at *4 (noting that to the extent the moving party argues the non-movant's Rule 56.1 statement should be stricken "because it contains 'improper arguments,' the burden for demonstrating the necessity of such a remedy is high"). Accordingly, the undersigned recommends Plaintiff's Cross-Motion to Strike be denied in part (*see supra*, Section I.B.).

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

In order to obtain summary judgment, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett*¸ 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the burden shifts and the

nonmovant may defeat the motion only by adducing evidence of specific facts that raise a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*¸ 316 F.3d 93, 100 (2d Cir. 2002).

"The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted).  The role of the court at the summary judgment stage is not to *resolve* disputed issues of fact, but merely undertake an analysis to *identify* whether triable issue of fact exist. *See Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). That is, the court's function is "issue-finding," not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)).  *Au fond*, the court's role is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248 and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

Viewing the facts presented here in the light most favorable to Plaintiff, the undersigned finds: (i) Plaintiff failed to show Defendants breached the Policy agreement or otherwise acted in bad faith; (ii) Plaintiff failed to show Defendants committed fraud under New York law on connection with its handling of Plaintiff's insurance claim; and (iii) Plaintiff's GBL Section 349 claim fails as a matter of law, and, therefore, respectfully recommends summary judgment be granted in favor of Defendant on all three Counts asserted in the Complaint.

## B. **Breach of Contract and Bad Faith**[8]

As a preliminary matter, this Court notes that New York law applies to Plaintiff's breach of contract claim. "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). For contract disputes where there is no applicable choice-of-law clause, New York courts apply a "center of gravity" approach, considering "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030–31 (2d Cir. 1996), *cert denied*, 519 U.S. 1116 (1997). However, "[a] party can waive a choice-of-law argument." *Reed Constr. Data Inc. v. McGraw-Hill Companies Inc.*, 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014). Here, both parties applied New York law in their motion papers. (*See* ECF Nos. 81-2, 81-78, 81-156.) Thus, the parties have waived any choice-of-law argument, and the Court proceeds under New York law. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293,

---

[8] With respect to bad faith, the undersigned notes that Plaintiff's "cause of action alleging bad faith is "duplicative of the cause of action alleging breach of contract[,]" as "there is no separate tort for bad faith refusal to comply with an insurance contract" under New York law. *Multani v. Castlepoint Ins. Co.*, 200 N.Y.S.3d 54 (N.Y. App. Div. 2d Dep't 2023) (collecting cases) (internal citations omitted). Specifically, under New York law, "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life and Accident Ins. Co.*, 310 F.3d 73, 80-81 (2d Cir. 2002) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *see also Fleisher v. Phoenix Life Ins. Co.*, 858 F.Supp.2d 290, 299 (S.D.N.Y.2012) (holding that in order to "avoid redundancy," claims of breach of the implied covenant of good faith and fair dealing "must be premised on a different set of facts from those underlying a claim for breach of contract."). Therefore, because the Court finds Plaintiff "alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts," the undersigned initially recommends the latter claim be "dismissed as redundant. *Dufficy v. Nationwide Mut. Fire Ins. Co.*, No. 13 CV 6010 SJF AKT, 2013 WL 6248529 at *2 (E.D.N.Y. Dec. 2, 2013) (citations omitted).

296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this dispute, and such 'implied consent . . . is sufficient to establish choice of law'") (internal citations omitted).

To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff; (3) defendant's breach; and (4) damages resulting from the breach. *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (2nd Dep't, App. Div. 2013); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). The parties agree that they entered into an insurance agreement, and therefore only the second, third, and fourth elements of the claim are at issue. The crux of Plaintiff's claim is that State Farm failed to comply with its coverage obligations under Coverages A, B, and C of the Policy, and, that State Farm improperly denied coverage with respect to his Additional Inventory Claim under Coverage B. (ECF No. 81-78.) As explained further below, the undersigned finds: (i) Plaintiff failed to comply with the Policy Conditions such that State Farm properly denied coverage for his Additional Inventory Claim under Coverage B[9]; (ii) State Farm otherwise met its coverage obligations to Plaintiff under Coverages A, B, and C, and Plaintiff does not proffer any evidence to challenge the amounts Defendant paid to Plaintiff.

## 1. <u>Plaintiff's Failure to Comply with Policy Conditions</u>

Defendant argues that Plaintiff failed to comply with the Conditions in the policy in connection with his Additional Inventory Claim, specifically, that Plaintiff failed to: (i) appear for the EUO, as required under Section 2(d)(3)(b) of the policy agreement, and (ii) serve a signed POL for the additional inventory for which Plaintiff claims he was entitled to payment, and therefore is in breach of the insurance agreement and precluded from coverage under the policy

---

[9] To the extent Plaintiff claims he is owed more than what was paid by State Farm under Coverages A and C, the undersigned notes that Plaintiff additionally had an obligation to "make reasonable and necessary temporary repairs required to protect the property" and failed to do so. (ECF No. 81-77 at ¶ 11.)

with respect to that additional inventory. (ECF No. 81-156). Under New York law, it is well settled that "the insured's cooperation is a condition precedent to coverage under an insurance policy[,]" and that summary judgment "is appropriate where it is determined that an insured's conduct constitutes a breach of the policy's cooperation clause." *Stradford v. Zurich Ins. Co.*, No. 02 CIV.3628, 2002 WL 31819215 at \*4 (S.D.N.Y. Dec. 13, 2002) (citing *Maurice v. Allstate Ins. Co*., 570 N.Y.S.2d 654, 655 (N.Y. App. Div. 2d Dep't 1991).

*First*, with respect to the EUO, "an insured's willful failure to appear for an examination under oath as required by a policy of insurance constitutes a material breach of the policy's cooperation clause and precludes the insured from recovering on the insurance contract." *Stradford*, No. 02 CIV.3628, 2002 WL 31819215 at \*4; *see also IDS Prop. Cas. Ins. Co. v. Stracar Med. Servs., P.C*., 985 N.Y.S.2d 116 (N.Y. App. Div. 2d Dep't 2014) (citations omitted) (collecting cases) ("It is well established that the failure to comply with the standard policy provision requiring disclosure by way of submission to an examination under oath, as often as may be reasonably required, as a condition precedent to performance of the promise to indemnify, constitutes a material breach of the policy, precluding recovery of the policy proceeds").

Plaintiff requested to adjourn scheduled EUOs *seven* times, and only appeared once, in which he was late, resulting in the examination being incomplete. (ECF No. 81-77 at ¶ 79-104). Following the incomplete examination, State Farm continuously followed up to schedule a continued examination and adequately forewarned Plaintiff that his failure to appear for the EUO would result in automatic denial of coverage for his additional inventory under the policy. (*Id*. at ¶ 96). *See IDS Prop. Cas. Ins. Co.*, 985 N.Y.S.2d at 116 (emphasis added) (finding insurer "established its *prima facie* entitlement to judgment as a matter of law" where it submitted

evidence establishing that it *twice* duly demanded an examination under oath from the insured, and the insured *twice* failed to appear); *see also Ruggerio v. Harleysville Preferred Ins. Co.*, 278 F. Supp. 3d 536 (D. Conn. 2017) (citations omitted) (collecting cases) ("It has also been held that there is a bar to recovery where an insured stayed for only part of the examination and left, and that failure to submit to a second examination as agreed upon at the close of the first examination constitutes a failure by the insured to comply with contractual obligations.").

Plaintiff claims State Farm's demand for EUO is defective because it demands more than what is authorized to verify the claim, and relies primarily on *Dynamic Med. Imaging, P.C. v State Farm Mut. Auto. Ins. Co.*, 29 Misc. 3d 278 (Nassau Dist. Ct. 2010) ("*Dynamic*"). (ECF No. 81-78 at 21.) *Dynamic* dealt with a no-fault issue between State Farm and its insured, a medical imaging facility, whereby State Farm's EUO demand included requests for documentation of: (i) the ownership of the facility, (ii) income and expenses of the facility, and (iii) documents relating to relationship between the facility and companies that provide equipment, space management, consulting to the facility and respective payments. *Id.* at 290.  The *Dynamic* Court held:

> An EUO permits the insurer to question the injured party regarding the claim. Appearance at a properly demanded EUO is a condition precedent to the insurer's liability to pay no-fault benefits. However, the no-fault regulations do not entitle the insurer to production of documents relating to corporate structure or finances or to obtain written documentation other than such documentation as may be demanded as verification of the claim.

*Id.* at 278 (citing 11 NYCRR Part 65-3.5 [e]).

Here, unlike the insurer's EUO in *Dynamic*, State Farm's EUO demand contained requests for deed, title, photos, tax returns, contracts between and Champion regarding Plaintiff's property claim, and other papers relating to the supplemental loss – documentation and information relevant to Plaintiff's claim of fire damage to the additional inventory. (ECF No. 81-1 at 6.) To this end, the undersigned finds State Farm's EUO demand only requests information

necessary to verify the claim, and that Plaintiff did not comply with the policy condition that required him to appear for an EUO, which constitutes adequate grounds for denial of coverage with respect to his additional inventory. Plaintiff's further contentions that he failed to appear for the EUO due to a medical condition are unconvincing, in light of his failure to proffer an expert attesting to said medical condition (ECF No. 81-2 at 8), and his appearance for two of his own depositions, totaling 7 hours, as well as the depositions of several other individuals. (ECF No. 81-1 at ¶ 105). His medical arguments are conclusory and do not create an issue of fact for trial.

*Second*, with respect to the POL, Plaintiff refused to provide State Farm with the POL for his Additional Inventory Claim, despite many requests and warnings from State Farm that his failure to do so would result in a disclaimer of coverage with respect to Plaintiff's additional inventory claim. (ECF No. 81-1 at ¶ 83.). It is well settled under New York law that where, as here, "an insurer gives its insured written notice of its desire that proof of loss under a policy of fire insurance be furnished[,] and provides a suitable form for such proof, failure of the insured to file proof of loss within 60 days after receipt of such notice, or within any longer period specified in the notice, is an absolute defense to an action on the policy, absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense." *Converse v. State Farm Fire & Cas. Co.*, No. 521CV457(TJM)(ATB), 2023 WL 4489510 at *8 (N.D.N.Y. July 12, 2023) (citing *Igbara Realty Corp. v. New York Property Ins. Underwriting Assoc.*, 470 N.E.2d 858 (N.Y. 1984)); *see also* N.Y. Ins. Law § 3407 (McKinney) ("[I]nsurers shall, after loss or damage, give insureds a written notice that it or they desire proofs of loss to be furnished by such insured . . .[i]f the insured shall furnish proofs of loss within sixty days after the receipt of such notice[,] or within any longer period of time specified in such notice, such insured shall be deemed to have complied with the provisions of such contract").

State Farm provided Plaintiff with a blank Sworn Statement in Proof of Loss Form for his convenience, and Plaintiff does not dispute that he willfully refused to fill the POL with respect to his Additional Inventory Claim. (ECF No. 81-1 at ¶ 107.) Rather, Plaintiff contends State Farm's request for a POL was an attempt to "safeguard [its] own revenue stream" and "continue the float[,]" thereby implying State Farm requested the POL in bad faith. (ECF No. 81-78). State Farm's Policy conditions specifically require that every insured submit a POL in connection with their claim for property damage, and because Plaintiff was requesting coverage for additional inventory not contained in Plaintiff's original claim, he was required to submit another proof of loss with respect to the additional inventory under the policy. (ECF No. 81-77 at ¶ 11.) Plaintiff does not provide any evidence to suggest that State Farm's request for the POL was made in bad faith. Moreover, State Farm did not otherwise waive Plaintiff's obligation to submit a POL with respect to the additional inventory. As previously mentioned, State Farm notified Plaintiff on several occasions both in e-mail and in writing that he was required to submit the POL, and further advised:

> State Farm is not waiving any of the policy requirements of your State Farm policy including the time requirements for an insured to file a sworn statement in proof of loss when demanded.

(ECF No. 81-1 at ¶111); *See Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) ("In any case, when a party "repeatedly and expressly reserve[s] its rights in its communications" with the other party, "[s]uch reservations preclude arguments both as to waiver and as to equitable estoppel."); *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F.Supp.2d 245, 254 (S.D.N.Y. 2003). ("When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred."). Therefore, because Plaintiff willfully refused to appear for an EUO and submit a POL in connection with his Additional Inventory Claim, and State Farm did not otherwise waive the requirement or admit liability, State Farm was justified in

denying coverage with respect to that claim. Accordingly, the undersigned finds Plaintiff failed to perform under the insurance agreement between the parties.

### 2. **Plaintiff Failed to Show Breach Under Coverages A, B, and C**

The undersigned additionally finds Plaintiff failed to demonstrate State Farm breached the insurance agreement in failing to comply with its coverage obligations under Coverages A, B, and C. Under Coverage A, B, and C, Defendant paid Plaintiff $207,354.32, $76,163.94, and $66,568.09, respectively, despite Plaintiff's continued failure to comply with Policy conditions. *See e.g.,* ECF No. 81-2 at 7-9 (State Farm contends that it paid Plaintiff for "15 months and 18 days of ALE expenses for a total of $66,568.09" despite Plaintiff "never [having] obtained a single building permit" and "never [having] undertook any repairs to the Premises."). To this end, State Farm already paid Plaintiff what he was owed under Coverages A, B, and C, respectively, and that Plaintiff has not otherwise provided any evidence "of estimates, valuations, expert opinions, repair costs," and/or content replacement costs, to suggest that the amounts paid by State Farm were in sufficient or that he was owed additional coverage under the Policy. (*Id.* at 9.)

Specifically, Plaintiff failed to provide an expert under FRCP 26 to challenge: (i) State Farm's appraiser's estimates as to Plaintiff's losses under Coverage A, B, and C, or (ii) Plaintiff's inability to appear for the EUO, in connection with Plaintiff's Additional Inventory claim. (ECF No. 81-1 at ¶ 120.) Where, as here, a defendant moves for summary judgment based on expert opinion evidence, and plaintiff fails to "substantiate [its] allegations" with expert proof, said plaintiff "has not met the required standard of evidence for denial of summary judgment." *Bruno v. Toyotomi U.S.A., Inc.*, 203 F.R.D. 77 (N.D.N.Y. 2001) (collecting cases); *see also Schaefer v. Marchiano*, 597 N.Y.S.2d 470, 471 (N.Y. App. Div. 2d Dep't 1993)

(holding where "plaintiffs did not produce an affidavit from a medical expert showing a deviation by the appellant from accepted medical practices . . . they did not meet the standard of evidence required to rebut the motion for summary judgment by demonstrating a triable issue of fact."); *Bingham v. Godfrey,* 495 N.Y.S.2d 428, 429 (N.Y. App. Div. 2d Dep't 1985) (same).

As Plaintiff has not otherwise proffered a reason for failing to identify an expert, he is precluded from identifying one and may not otherwise challenge State Farm's appraisers' estimates. *See Puglisi v. Town of Hempstead Sanitary Dist.*, No. 2, No. 11 Civ. 0445, 2013 WL 4046263 at* 3 (E.D.N.Y. Aug. 8, 2013) ("Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(A) requires a party to disclose the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."); *Brady v. Foodliner, Inc*., No. 15 Civ. 4566, 2022 WL 1624040 (E.D.N.Y. May 21, 2022) (quoting Fed. R. Civ. P. 27(c)(1)) ("When a party fails to timely identify an expert witness and provide information about the expert's opinions, 'the party is not allowed to use that information or witness to supply evidence ... at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'").

Accordingly, because the undersigned finds Plaintiff's breach of contract claim is based on "conclusory allegations" that State Farm paid him inadequate amounts or otherwise improperly denied him coverage, undersigned recommends Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim be granted. *See Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 115 (S.D.N.Y. 2021) ("A breach of contract claim cannot rest on a conclusory statement that the defendant breached a contract"); *Barlow v. Gov't Emps. Ins. Co*., 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at *3 (E.D.N.Y. Sept. 29, 2020) ("A complaint alleging a breach-of-contract must 'identify, in non-conclusory fashion, the

specific terms of the contract that a defendant has breached.'") (quoting *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)).[10]

### C. Fraud

In support of his fraud claim, Plaintiff alleges State Farm: (i) fraudulently prepared a Disclaimer letter dated November 19, 2019, which he never received on that date; and (ii) discarded Plaintiff's property without his consent, in order avoid providing coverage under the Policy. (ECF No. 81-78 at 25-26, 29-30.) In response, State Farm contends that they timely provided Plaintiff with the November 26, 2019 Disclaimer, which was not fraudulently prepared, and Plaintiff's own contractor was responsible for the alleged destruction of property listed in Plaintiff's Additional Inventory Claim. (ECF No. 81-1 at ¶ 39-49.)

To state a claim for fraud under New York law, Plaintiff must show: (i) "representation of a material existing fact[,]" (ii) "falsity[,]" (iii) "scienter[,]" (iv) "deception[,]" and (v) "injury." *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995); *Nafash v. Allstate Ins. Co.*, 28 N.Y.S.3d 381 (N.Y. App. Div. 2d Dept' 2016) (internal citations omitted) ("The essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the

---

[10] The undersigned additionally finds summary judgment should be granted in Defendant's favor because Plaintiff has served no expert disclosures to support his claim that State Farm acted improperly in investing, adjusting and paying his claim, or to otherwise support his damages claim. *See e.g., Oparaji v. Mun. Credit Union*, 2020 U.S. Dist. LEXIS 242211, at *19 (S.D.N.Y. Dec. 21, 2022) (Under New York law, "damages arising from contract claims must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract. Thus, "[w]here a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order.").

misrepresentation or material omission, and injury"). As applied in insurance cases, the Second

Circuit has recognized:

> New York courts have created a regime in which an insured's claims against a first-party
> insurer are generally considered under a contract theory, and the damages available are
> limited to those awarded under contract. However, New York courts have [also]
> identified a limited number of instances where an insured can recover damages in excess
> of contract damages, that is, tort damages, from his or her first-party insurer.

*Manning v. Utilities Mut. Ins. Co*., 254 F.3d 387, 399–400 (2d Cir. 2001). Specifically, under

*Rocanova v. Equitable Life Assur. Soc. of U.S*., 634 N.E.2d 940, 944 (N.Y. 1994) ("*Rocanova*"),

the awarding "of compensatory and punitive damages in such cases" requires the defendant's

conduct to be: (i) "actionable as an independent tort for which compensatory damages are

ordinarily available[;]" and (ii) "aimed at the public generally," involving "a fraud evincing a

high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a

criminal indifference to civil obligations." *Id.* at 943-44. To this end, "[w]here a fraud claim is

premised on defendants' alleged breach of contractual duties," a plaintiff may maintain the fraud

claim in one of three ways: (i) "demonstrating a legal duty separate from the duty to perform

under the contract[;]" (ii) "demonstrating a fraudulent misrepresentation collateral or extraneous

to the contract[;]" or (iii) "seeking special damages that are caused by the misrepresentation and

unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*.,

98 F.3d 13, 20 (2d Cir. 1996).

Here, the undersigned finds that Plaintiff has not provided even a scintilla of evidence to

suggest that Defendant committed fraud, neither with respect to Plaintiff individually nor the

general public. *First*, Plaintiff does not present any evidence to suggest that the November 26,

2019 Disclaimer was fraudulently prepared or otherwise "backdated" as he claims. Rather, State

Farm presented evidence contained in its Claims Log showing that the November 26, 2019

Disclaimer was in fact sent to Plaintiff and his adjuster on that date, and, that it is impossible for them to "back-date" letters. *See* ECF No. 81-1 at ¶ 127-28 (State Farm's "Claim Activity Log entries are date and time stamped at the moment of entry and cannot be altered or amended or added to, once entered into the system . . . [i]t is not possible for a claim note discussing the creation of and issuance of a Notice of Denial & Disclaimer of Insurance Coverage to be created and 'back dated' into the system at any time as every entry is stamped with both the date and time at the moment of entry.") Even if this Court were to find the letter were fraudulent, Plaintiff has failed to show reliance – Plaintiff "timely filed this lawsuit and took whatever other legal action he felt was appropriate[,]" and, as Plaintiff "has identified no change in any course of conduct he took in reaction to the existence of" the November 26, 2019 Disclaimer, he "has failed to identify any damages which were caused by that document[,]" and therefore, "his fraud claim fails as a matter of law." (ECF No. 81-2 at 23.) *See e.g, Nafash*, 28 N.Y.S.3d at 384–85; *Manning*, 254 F.3d at 401 (holding plaintiff failed to state a fraud claim under New York law where he did not allege that "he reasonably and detrimentally relied" on the alleged "accounting excuse" employed by the defendant insurer to deny coverage).

*Second*, Plaintiff has not presented any evidence to suggest State Farm discarded Plaintiff's property without his consent, in order avoid providing coverage under the Policy. (ECF No. 81-78 at 25-26, 29-30.) Rather, Defendant presented evidence that once State Farm completed the contents inspection on March 21, 2019, it released its hold on the contents, and the contents were released to Plaintiff to do with as Plaintiff wished, which was confirmed by Plaintiff's former adjuster, Mr. Rosenbloom. (ECF No. 81-1 at ¶ 40.) State Farm presented further evidence that "[a]t the time of the contents walkthrough and request to release the contents, State Farm had no knowledge that Plaintiff would later claim the contents list State

Farm had received from Champion was incomplete nor that additional contents items would be claimed in the future." (*Id.* at ¶ 41.); *Nafash*, 28 N.Y.S.3d at 384–85 (finding summary judgment appropriate where the plaintiff "failed to offer an evidentiary basis to suggest that discovery may lead to relevant evidence or that the facts essential to justify opposition to the motion were exclusively within the knowledge and control" of the defendant insurer). Moreover, invoices presented by State Farm show that Plaintiff in fact hired his own contractor – who had no relation to State Farm – to dispose of his property:

> On April 30, 2019, Champion presented to State Farm an April 18, 2019 invoice for the disposal of contents from the Premises, prepared by East End. Plaintiff admitted that the contents of the Premises were disposed of before Champion submitted the April 18, 2019 invoice to State Farm on April 30, 2019.  At no point did State Farm have direct contact with or issue any instruction or direction to East End. State Farm had no contract with and exercised no control over East End.

(*Id.* at ¶ 45-49.)

As Plaintiff has not presented any admissible evidence showing that Defendant created a fraudulent disclaimer letter and/or destroyed his property without his consent in order to avoid providing coverage, he has not shown State Farm's conduct in the handling of his claim is "actionable as an independent tort for which compensatory damages are ordinarily available" under *Rocanova. See Rocanova*, 634 N.E.2d at 944; *Reid v. Univera Healthcare, Excellus Health Plan, Inc.*, 116 N.Y.S.3d 453, 455 (N.Y. App. Div 4th Dep't 2019) (holding "plaintiff's allegation does not constitute a tort cause of action inasmuch as it simply refers to [defendant's] obligation to provide health insurance coverage to plaintiff under the Plan.") Even assuming, *arguendo*, the November 26, 2019 Disclaimer was fraudulently prepared by State Farm, "fatal to [Plaintiff's] fraud claim is [his] failure to allege reasonable reliance on such misrepresentations and that he suffered damages as a result." *Manning*, 254 F.3d at 401. Accordingly, the undersigned finds Plaintiff failed to demonstrate State Farm committed fraud under New York

law, and respectfully recommends summary judgment be granted in favor of Defendant with respect to Plaintiff's fraud claim.

###    D.  **GBL Section 349**

To recover "damages for deceptive business practice" under General Business Law § 349, a plaintiff must show: (i) the defendant "engaged in a deceptive act or practice[;]" (ii) that the "challenged act or practice was consumer-oriented[;]" and (iii) that plaintiff "suffered an injury as a result of the deceptive act or practice." *Valentine v. Quincy Mut. Fire Ins. Co.*, 1 N.Y.S.3d 161, 165 (N.Y. App. Div. 2d Dep't 2014) (internal citations omitted) ("Conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it constituted a standard or routine practice that was consumer-oriented in the sense that it potentially affected similarly situated consumers"); *JP Morgan Chase Bank, N.A. v. Hall*, 996 N.Y.S.2d 309 (N.Y. App. Div. 2d Dep't 2014) (citations omitted) ("A party claiming the benefit of General Business Law § 349 must, as a threshold matter, charge conduct that is consumer oriented, *i.e.*, conduct that has a broad impact on consumers at large").

Here, Plaintiffs claims Defendant violated the GBL by not providing sufficient payment for his property damage and by fraudulently preparing a disclaimer letter in order to avoid coverage. (ECF No. 81-78 at 25-26, 29-30.)  Plaintiff additionally claims that State Farm failed to return phone calls, demanded documents, sworn statements, and an EUO in efforts to harass and dissuade plaintiff from pursuing his claims. (*Id.*)

The undersigned finds the alleged misconduct attributed to State Farm – otherwise unsupported by admissible evidence[11] – was not "consumer-oriented [pattern of practice], but

---

[11] The only evidence Plaintiff has produced of the unreturned calls was a single audio recording of a voice mail left for Mr. Condoleo on November 28, 2019. (ECF No. 81-1 at ¶ 141.) At the time of Mr. Becker's alleged unanswered phone calls, State Farm claims "he had no active insurance claim or policy with [State Farm,]" as "[t]he claim[s] he presented under his previous policy [were] already paid in part, [and]

rather involved the terms of insurance contracts unique to the parties." *See Nafash*, 28 N.Y.S.3d at 381 (collecting cases); ECF 81-2 at 23 ("Under the GBL, State Farm contends that Plaintiff was required to – and failed to – show that State Farm "has a general business practice of not promptly returning phone calls."); *see also New York Univ. v. Cont'l Ins. Co.* 662 N.E.2d at 763 (citations omitted) ("The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute").

Therefore, because Plaintiff's claims involve a "private" contract dispute over policy coverage and the processing of his claim, which is unique to these parties, and "not conduct which affects the consuming public at large," the undersigned finds his claims "fall outside the purview of General Business Law § 349." *Reid,* 116 N.Y.S.3d at 453; *Wilner v. Allstate Ins. Co*., 893 N.Y.S.2d 208 (2010) (N.Y. App. Div 2d Dep't) (GBL § 349 does not apply to private contract disputes unique to the parties). Plaintiff's reliance on *Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F. Supp. 732, 736 (S.D.N.Y. 1990), *aff'd in part, question certified*, 977 F.2d 47 (2d Cir. 1992), *certified question withdrawn*, 984 F.2d 69 (2d Cir. 1993) ("*Riordan*") in support of his GBL claim is misplaced. In *Riordan*, the Court held that the defendant insurer violated the GBL where it refused to settle multiple cases and provided the plaintiffs (insureds) with settlement offers significantly lower than the amount of property damage, despite the plaintiffs' continued compliance with defendant Nationwide's policy conditions and cooperation in settlement. *Id*. at 738. Specifically, plaintiffs alleged:

> Nationwide has adopted or engendered, with respect to certain categories of claims or insureds, a claim settlement policy and practice designed to frustrate fair and efficient

---

denied in part[,] and [were] no longer pending." (ECF No. 81-2 at 25.) State Farm further contends it "has a communication policy [requiring phone calls to be returned promptly] which is in full compliance with the mandates of" New York Insurance law. (ECF No. 81-1 at ¶ 133.)

claim settlement[.] Specifically, Nationwide's policy and practice is to: (a) refuse to settle claims piecemeal even where agreement can be had on the settlement value of a portion of a claim; (b) value claims for adjustment at present cash value despite the insured's election of replacement value coverage; (c) require insureds to replace items out of their own funds before Nationwide will advance monies on a replacement value basis; (d) train adjustors without regard to the requirements of New York Insurance Law and the rules promulgated thereunder; and (e) compel policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

*Id*. at 736. The Court found that Nationwide violated numerous provisions of New York Insurance Law "to coerce plaintiffs to settle for an amount far less than that to which they were entitled[,]" and concluded that Nationwide had "a policy and practice of violating New York Insurance Law § 2601[,]" which "constitutes a deceptive business practice sufficient to satisfy the requirements of Section 349." *Id*. at 739. The Court reasoned:

Although plaintiffs allege that their primary and direct injury results from Nationwide's breach of its obligations under the Policy, plaintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. Plaintiffs allege a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the Policy and therefore set forth precisely such evidentiary allegations of injury to the public at large as are required to sustain their claim under the General Business Law. The public injury inherent in such a scheme, is unquestionable since the alleged deceptive practices go to the very essence of the services Nationwide provides to the public on a grand scale, as well as its obligation to deal with the public in good faith.

*Id*. Unlike the plaintiffs in *Riordan*, Mr. Becker has not presented a pattern and practice of deceptive acts by State Farm to avoid coverage under the Policy, or otherwise shown that State Farm engaged in illegal settlement practices in the instant case or on a "grand scale" with other insureds. *Id*. Also unlike the Plaintiffs in *Riordan*, Mr. Becker has not demonstrated "any loss allegedly sustained by [him] as a result of defendant's allegedly deceptive acts, practices or advertisement, much less one that is independent of the loss caused by defendant's purported breach of contract." *Dufficy*, No. 13 CV 6010 SJF AKT, 2013 WL 6248529, at *4. Thus, because the Court finds Plaintiff failed to show Defendant violated Section 349 of the GBL, the

undersigned respectfully recommends Defendant's motion for summary judgment with respect to that claim be granted.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully recommends:

(i)    Plaintiff's Cross-Motion to Strike be **GRANTED** *in part* and **DENIED** *in part*; and

(ii)    Defendant's motion for summary judgment be **GRANTED** on all three Counts.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Counsel for Defendant. Counsel for Defendant is directed to serve copies of this Report and Recommendation upon *Pro Se* Plaintiff and file proof of service on ECF within two (2) days of the posting of this Report and Recommendation.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's

decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  January 29, 2024

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

50